**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
                    :

FREEPLAY MUSIC, LLC,

                    : No. 15-cv-01119-GBD

            Plaintiff,

                    :

      v.

                    : **ANSWER AND COUNTERCLAIMS**

AWESOMENESS LLC and BIG FRAME, INC.,

                    :

            Defendants.
---------------------------------------------------------X

## ANSWER

      Defendants Awesomeness LLC ("Awesomeness") and Big Frame, LLC ("Big Frame"), incorrectly sued herein as Big Frame, Inc. (collectively, "Defendants"), by and through their attorneys Loeb & Loeb LLP, answer the Amended Complaint of Plaintiff Freeplay Music, LLC ("Freeplay") as follows:

      1.      In response to paragraph 1, Defendants deny that they have misappropriated any of Freeplay's copyrights or profited from any such misappropriation, and state that they lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 1.

      2.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2.

      3.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.

      4.      In response to paragraph 4, Defendants admit that Freeplay's affiliate TuneSat contacted Defendants offering to sell TuneSat's services and that Freeplay commenced this lawsuit after Defendants declined to purchase TuneSat's services.  Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations concerning Freeplay's contact and litigations with other MCNs, and deny the remaining allegations in paragraph 4.

5.      Defendants deny the allegations in paragraph 5.

6.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6.

7.      Defendants admit the allegations of paragraph 7.

8.      Defendants deny the allegations of paragraph 8.

9.      Defendants deny the allegations in paragraph 9.

10.     Paragraph 10 contains allegations of law, to which no response is required.

11.     Paragraph 11 contains allegations of law, to which no response is required.

12.     Paragraph 12 contains allegations of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations of paragraph 12.

13.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

14.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

15.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.

16.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16, except admit that BMI and ASCAP are performing rights organizations.

17.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17.

18.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18.

19.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19.

20.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20.

21.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21.

22.     In response to paragraph 22, Defendants deny that there has never been ambiguity as to what constitutes "personal use," and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 22.

23.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23.

24.     Paragraph 24 contains allegations of law, to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24.

25.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25, except admit that Freeplay's website permits the free use of Freeplay's music in personal videos on YouTube.

26.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26, except admit that Freeplay's website permits the free use of Freeplay's music in personal videos on YouTube.

27.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27, except admit that Freeplay's current website permits a user to select various license types for its music, including for free "personal use" on YouTube.

28.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28, except admit that Freeplay's website permits a user to select various license types for its music, including for free "personal use" on YouTube.

29.     In response to paragraph 29, Defendants deny that Freeplay's terms concerning free "personal use" on YouTube are "clear," and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 29.

30.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30.

31.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31.

32.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32.

33.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33.

34.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34.

35.     Defendants deny the allegations of paragraph 35 insofar as they relate to Defendants, and lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35.

36.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36.

37.     In response to paragraph 37, Defendants admit that they operate MCNs, and otherwise deny the allegations in paragraph 37.

38.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38, except admit that some MCNs host content on YouTube.

39.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39.

40.     In response to paragraph 40, Defendants deny that Awesomeness was acquired in 2013 for $117 million.  Defendants admit that, in 2014, Awesomeness was valued at or around $325 million in connection with a specific transaction.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40 concerning the size of the MCN industry.

41.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41.

42.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42.

43.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43.

44.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44.

45.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45.

46.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46.

47.     Defendants deny the allegations of paragraph 47 insofar as they relate to Defendants, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 47 concerning other MCNs.

48.     In response to paragraph 48, Defendants admit that Freeplay's affiliate TuneSat contacted Defendants offering to sell TuneSat's services and that Freeplay commenced this lawsuit after Defendants declined to purchase TuneSat's services.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 48 concerning Freeplay's and TuneSat's contact with other MCNs.

49.     Defendants deny the allegations of paragraph 49 insofar as they relate to Defendants, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 49 concerning other MCNs.

50.     In response to paragraph 50, Defendants admit that Freeplay's affiliate TuneSat contacted Defendants offering to sell TuneSat's services and that Freeplay commenced this lawsuit after Defendants declined to purchase TuneSat's services.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 concerning other MCNs.  Defendants deny the remainder of the allegations in paragraph 50.

51.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51.

52.     Defendants deny the allegations of paragraph 52.

53.     Defendants deny the allegations of paragraph 53.

54.     Defendants deny the allegations of paragraph 54.

55.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55.

56.     Defendants deny the allegations of paragraph 56.

57.     Defendants deny the allegations of paragraph 57.

58.     Defendants deny the allegations of paragraph 58.

59.     Defendants deny the allegations of paragraph 59.

60.     In response to paragraph 60, Defendants repeat and re-allege each of their responses to paragraphs 1 through 59 as if fully set forth herein.

61.     Defendants deny the allegations of paragraph 61.

62.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62.

63.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63.

64.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64.

65.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65.

66.     Defendants deny the allegations of paragraph 66.

67.     Defendants deny the allegations of paragraph 67.

68.     Defendants deny the allegations of paragraph 68.

69.     Defendants deny the allegations of paragraph 69.

## DEFENSES

Defendants state the following defenses without assuming the burden of proof on such defenses that would otherwise rest with Freeplay, and without prejudice to Defendants' right to assert any and all other defenses revealed during the course of discovery.

### First Defense

1.     The Amended Complaint fails to state claim upon which relief may be granted.

### Second Defense

2.     Freeplay's claim is barred, in whole or in part, because Freeplay does not own the copyrights to the allegedly infringed works.

### Third Defense

3.     The Court lacks subject matter jurisdiction over Freeplay's claim because Freeplay lacks standing to assert its claim.

### Fourth Defense

4.     Freeplay's claim is barred, in whole or in part, to the extent that Freeplay has failed to properly or timely register its purported works with the United States Copyright Office.

### Fifth Defense

5.     Freeplay's claim is barred, in whole or in part, because the allegedly copied works are not original to Freeplay and/or do not constitute protectable copyrightable matter.

### Sixth Defense

6.     Freeplay's claim is barred, in whole or in part, because Freeplay's purported copyrights are invalid and/or unenforceable.

**Seventh Defense**

7.      Freeplay's claim is barred, in whole or in part, by the doctrine of misuse of copyright.

**Eighth Defense**

8.      Freeplay's claim is barred, in whole or in part, by the doctrine of unclean hands.

**Ninth Defense**

9.      Freeplay's claim is barred, in whole or in part, by the statutory immunity granted under 17 U.S.C. § 512.

**Tenth Defense**

10.      Freeplay's claim is barred, in whole or in part, because any use of the allegedly infringed works was *de minimis*.

**Eleventh Defense**

11.      Freeplay's claim is barred, in whole or in part, by the doctrine of fair use.

**Twelfth Defense**

12.      Freeplay's claim is barred, in whole or in part, Freeplay's license, consent and/or acquiescence to the alleged use of Freeplay's purported copyrights.

**Thirteenth Defense**

13.      Freeplay's claim is barred, in whole or in part, by the doctrines of waiver, estoppel and/or ratification.

**Fourteenth Defense**

14.      Freeplay's claim is barred, in whole or in part, by the statute of limitations.

**Fifteenth Defense**

15.      Freeplay's claim is barred, in whole or in part, by the doctrine of laches.

**Sixteenth Defense**

16.    Freeplay's claim for damages is barred, in whole or in part, due to Freeplay's failure to mitigate damages.

**Seventeenth Defense**

17.    Freeplay's claim for direct infringement is barred, in whole or in part, because the alleged primary infringements were not caused by any volitional conduct by Defendants and are not otherwise attributable to Defendants.

**Eighteenth Defense**

18.    Freeplay's claim for vicarious infringement is barred, in whole or in part, because Defendants did not and do not have the right or ability to control the alleged primary infringement and/or did not obtain a financial benefit directly attributable to the alleged primary infringement.

**Nineteenth Defense**

19.    Freeplay's claim for contributory infringement is barred, in whole or in part, because Defendants did not have knowledge of the alleged primary infringement and/or did not induce, cause or materially contribute to the alleged primary infringement.

**COUNTERCLAIMS**

Defendants/Counterclaim-Plaintiffs Awesomeness and Big Frame (collectively, "Counterclaim-Plaintiffs"), as and for their counterclaims against Plaintiff/Counterclaim-Defendant Freeplay, allege as follows:

**NATURE OF THE ACTION**

20.    This action arises from years of false and deceptive advertising by Freeplay to lure unsuspecting users into believing that the music offered on its website is "free."  Beginning

with its very name – "Freeplay" – its business model is premised on enticing consumers to download what is prominently advertised to the public to be "free" music, and then threatening, and commencing, copyright strike suits in an attempt to extort vast amounts of money after the consumer actually uses that music.  Since its inception in 2001, Freeplay has asserted copyright infringement claims in at least *two dozen* lawsuits, extracting settlements in these litigations and, upon information and belief, in an untold number of other instances where the simple threat of litigation was enough to extract a shake down from consumers who mistakenly thought they were getting exactly what Freeplay advertises – music that was "free" to use.

21.     In the last several years, Freeplay has aggressively taken its deceptive practices to YouTube, a platform used by tens, if not hundreds, of millions of users across the country and around the world to upload videos.  When a consumer looking for music to incorporate into a YouTube video searches Google with the term "free music," one of the top three search results is Freeplay's website, www.freeplaymusic.com.  A user who clicks through to Freeplay's website then sees the following offer, displayed front and center on Freeplay's homepage:



Freeplay's copyright infringement claim is premised on the very falsity of this promise of "free music for YouTube."

22.     Only buried deep within Freeplay's Web domain does Freeplay purport to disclose that this music is, in fact, not "free."  That disclosure is made in "Terms of Use" that a typical user would never see, nor is ever required to see, at *any* point in the course of

11

downloading Freeplay's music.  Most of Freeplay's victims learn that Freeplay's promise of "free music for YouTube" is supposedly false only when Freeplay sends a demand for payment, often demanding $150,000 in statutory damages, for *each* downloaded song, based on the outrageous notion that the user's unwitting "copyright infringement" was "willful."

23.     Freeplay's false advertising has harmed an untold number of consumers who innocently use Freeplay's "free" music in creating their YouTube videos, only to have these videos taken down when Freeplay issues a copyright takedown notice to YouTube and who are, in many cases, the victims of Freeplay's exorbitant settlement demands.  Its false and deceptive advertising has also harmed multi-channel networks ("MCN") operating on YouTube, like Counterclaim-Plaintiffs, whose constituent members are among those who have been deceived by Freeplay's deceptive practices.  Freeplay's tactics have deprived both Counterclaim-Plaintiffs, their constituent members and other YouTube users of advertising revenues to which they are entitled.  Perhaps most significantly in this action, it has forced Counterclaim-Plaintiffs, as well as numerous other MCN operators, to expend costly legal fees to defend against Freeplay's litigations, based on copyright "infringement" that is a direct and deliberate result of Freeplay's own false and deceptive advertising.

## JURISDICTION AND VENUE

24.     This action arises under section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a), and N.Y. Gen. Bus. Law §§ 349 and 350.

25.     The Court has subject matter jurisdiction over the claims arising under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over the claims arising under state statutory law pursuant to 28 U.S.C. §§ 1338(b) and 1367.

26.     Venue is proper in this District under 28 U.S.C. § 1391.

27.     The Court has personal jurisdiction over Freeplay because, among other things, Freeplay does business in New York and has waived any objection to personal jurisdiction by having commenced this action in this District.

## THE PARTIES

28.     Awesomeness is a California limited liability company, with a principal place of business in Los Angeles, California.

29.     Big Frame is a Delaware limited liability company, with a principal place of business in Los Angeles, California.

30.     Upon information and belief, Freeplay is a Delaware limited liability company, with a principle place of business in New York, New York.

## FACTS RELEVANT TO ALL CLAIMS

## COUNTERCLAIM-PLAINTIFFS' MCN BUSINESSES

31.     Counterclaim-Plaintiffs, in their capacity as MCN operators, aggregate a loose "network" of thousands of YouTube channels.  The vast majority of these member channels are owned and operated by individuals.  These individuals post videos on their channels and generate revenues from advertisements sold and posted by YouTube against those videos.  A channel owner can generate YouTube advertising revenue regardless of whether they are associated with an MCN.

32.     When these channels become part of Counterclaim-Plaintiffs' MCN networks, Counterclaim-Plaintiffs become entitled to a portion of these advertising revenues.  In exchange, these channels become part of the MCN's community and are provided with a variety of online educational and community building tools, cross-channel advertising and promotional

opportunities, and other benefits that come from being part of the MCN community. Counterclaim-Plaintiffs also serve as a conduit to collect and disseminate the advertising revenue derived from its members' videos.

33.      In almost all cases, the channels within Defendants' MCN networks are operated and controlled *independently* by these individual YouTube users, without any creative, editorial or production involvement by Counterclaim-Plaintiffs.

### FREEPLAY'S FALSE AND MISLEADING OFFER OF "FREE MUSIC"

34.      The counterclaims herein seek redress for Freeplay's deliberate and unlawful false and misleading representations that its music is "free" to use on YouTube videos.

35.      A typical user searching for free music on the Internet might run a Google search for "free music," which turns up the following results:



36.     As shown above, after the two paid advertisements, Freeplay is the third result shown in a Google search for "free music."  Upon information and belief, all of the other sites shown above do in fact provide free music.  Not surprisingly, anyone searching the Internet for "free music" would assume that Freeplay's music is also free.

37.     This assumption is reinforced when a consumer then proceeds to Freeplay's website (www.freeplay.com), which prominently offers "FREE MUSIC FOR YOUTUBE":



38.     Individual YouTube users who are lured by Freeplay's representations of "free" music for their YouTube videos have the opportunity to browse Freeplay's catalog on its website.  This catalog is also directly accessible from Google, without having to navigate first to Freeplay's homepage:



39.     After browsing Freeplay's catalog and listening to samples, the user has the option to select "Add to Cart" with respect to any song.  Upon checkout, the user is prompted to select from a dropdown menu of license options.  Two of these options, shown below, are "YouTube: Personal use on YouTube only" and "Internet: Personal Use (YouTube only)."



40.     The cost of both of these categories of licenses is zero, as shown in the images above.

41.     Whichever option the consumer selects, a popup window appears for a "Master Recording / Synchronization License" (the "License").  Section 4 of the License sets forth the permitted uses as follows:

- If the consumer selects the option for "YouTube: Personal use on YouTube only," the License permits "YouTube Personal use on YouTube only."

- If the consumer selects the option for "Internet: Personal Use (YouTube only)," the License permits "Internet Personal Use (Youtube only)."

42.     In either case, "personal use" on YouTube is expressly permitted.  For both options, ***the License gives the consumer no indication that an individual's use of a song on YouTube is anything other than a permitted "personal use."***  Indeed, "personal use" is not defined anywhere in the License.  The License does not incorporate any other terms by reference, nor does it offer a link to any other terms extraneous to the License.

43.     After the License is shown, all the user has to do to download the music and obtain the "free" license is to enter an email address and click his or her acceptance of the License.   The license and download transaction takes place directly on Freeplay's website, which, upon information and belief, is maintained and operated from Freeplay's place of business in New York.

44.     If for whatever reason an individual consumer has reason to question what a "personal use" on YouTube is, s/he can navigate to the FAQ section of Freeplay's website (http://www.freeplaymusic.com/faq.aspx) for clarification.   There, Freeplay explains as follows:

### Is any of the music on FPM free?

Yes. True to our name - all of the tracks in the Freeplay Music library are available to download for free in the following specific circumstances:

Youtube: All Freeplay Music tracks are available for free use on Youtube for PERSONAL USE, however Freeplay Music and YouTube retain the right to insert ads in any manner on, before, or otherwise connected to your video when posted on YouTube or any other YouTube-based platform.   Businesses need to purchase a YouTube license for business.

45.     The FAQ thus reiterates what is already apparent to consumers – that only "[b]usinesses need to purchase a YouTube license for business," for example, if a company is using Freeplay's music for a traditional commercial to be posted on YouTube.  If the consumer has made it to the FAQ section of Freeplay's website (and s/he has no need or reason to), this clarification would end all doubt that an *individual's* use of a Freeplay song on a YouTube video is permitted, and free.

46.     It is only in the fine print of Freeplay's "Terms of Use" that Freeplay purports to disclose that a permitted "personal use" on YouTube does not include "Multi-Channel Network

managed channel uses."  Crucially, these "Terms of Use" are ***not*** part of the License to which the consumer agrees to be bound when downloading Freeplay's music.  Nor does the consumer otherwise agree to be bound by these "Terms of Use" with *any* manifestation of assent, in any form.

47.     Just as importantly, at no point in the process of downloading Freeplay's music is the user prompted or required to read these "Terms of Use."  It is not surprising then that many, if not most, of the consumers who download Freeplay's music are not aware that the fine print of Freeplay's unilateral "Terms of Use" purports to exclude free use by individuals, simply because their channels happen to be associated with an MCN.

48.     Upon information and belief, Freeplay's website and License terms have changed since its inception.  Upon information and belief, at all relevant times, Freeplay has falsely, deceptively and misleadingly represented that its music was "free" to use under the circumstances at issue in this action.

49.     Because of the powerful draw of "free" products and services on consumers, virtually every level of government has promulgated rules, regulations and guidelines that specifically prohibit false and misleading representations concerning "free" offers of the type Freeplay has made.

50.     The Federal Trade Commission, for example, has promulgated a "Guide Concerning the Use of the Word 'Free' and Similar Representations."  That Guide explains: "Because the purchasing public continually searches for the best buy, and regards the offer of 'Free' merchandise or service to be a special bargain, all such offers <u>must be made with extreme care so as to avoid any possibility that consumers will be misled or deceived</u>."  16 C.F.R. § 251.1(a)(2) (underline added).  The Guide thus provides: "When making 'Free' or similar offers

all the terms, conditions and obligations upon which receipt and retention of the 'Free' item are contingent should be set forth clearly and conspicuously at the outset of the offer <u>so as to leave no reasonable probability that the terms of the offer might be misunderstood</u>." *Id.* § 251.1(c) (underline added).

51.     Similarly, the Rules of the City of New York ("RCNY"), where Freeplay is based (upon information and belief), provide: "A seller who imposes a condition on a free offer must describe the condition <u>clearly and conspicuously</u>.  The description of every condition on a free offer must be placed near the word 'free'…. This condition must be in print at least half as large as the print used for the word 'free.'" 6 RCNY § 5-06(b) (underline added).

52.     Notwithstanding these rules and regulations, Freeplay has brazenly misrepresented to consumers that it offers "FREE MUSIC FOR YOUTUBE," without the requisite "clear and conspicuous" disclosure of the conditions that purportedly must be met for the offer of "free music" to apply.

53.     YouTube users within Counterclaim-Plaintiffs' networks have been deceived and misled by Freeplay's false and misleading advertising and representations, including the users who posted the allegedly infringing YouTube videos that are at issue in this action.  Upon information and belief, other consumers who are not associated with Counterclaim-Plaintiffs' MCN networks have also been misled by Freeplay's offer of "free" music.

## FREEPLAY'S FALSE ADVERTISING HAS HARMED COUNTERCLAIM-PLAINTIFFS AND THE PUBLIC

54.     The natural and proximate – and, indeed, deliberate – consequence of Freeplay's misconduct has been the very copyright "infringements" by which Freeplay purports to have been injured.  In reality, Freeplay seeks to earn a windfall from these "infringements" through exorbitant settlement and litigation demands.

19

55.     This action is just one of *two dozen* in which Freeplay has asserted copyright infringement claims over the last several years.  Upon information and belief, most, if not all, of these litigations resulted in monetary settlements for Freeplay that exceeded what it could or would have earned in license fees, had the purported terms of usage been properly disclosed on its website.

56.     Upon information and belief, Freeplay has sent demand letters to other individuals and entities it never sued, and who entered into monetary settlements with Freeplay precisely to avoid the litigation that Freeplay threatened, but that its victims could not afford to defend.

57.     Upon information and belief, Freeplay routinely demands payment of $150,000 <u>per work</u> in its settlement demands and in litigation pleadings – as it does in the instant action – even though the purported "infringements" were caused by its own false and deceptive advertising, and even though the cost to license those works from Freeplay for "business use" ($250 per work) is orders of magnitude less than the amount of its unconscionable demands.

58.     As a direct result of Freeplay's false and deceptive representations and advertisements, Counterclaim-Plaintiffs, as well as other victims of Freeplay's practices, have been forced to expend costly legal fees to defend against Freeplay's predatory litigation efforts, all arising from the very "infringements" Freeplay has deliberately induced through its false, deceptive and misleading advertisements and representations.

59.     The harm to Counterclaim-Plaintiffs extends beyond legal fees.  Because Counterclaim-Plaintiffs' member channels relied on Freeplay's deceptive offer of "free music" and used such music in their videos (in most cases, for *de minimis* durations), these videos were removed from YouTube after Freeplay issued takedown notices.   This has deprived

Counterclaim-Plaintiffs and their member channels of advertising revenue, sales and viewership, and damaged their goodwill.

60.    Freeplay's conduct has also caused reputational injury by falsely casting Counterclaim-Plaintiffs as copyright infringers.

61.    Unless Freeplay's predatory business practices are put to a halt, Counterclaim-Plaintiffs, other MCNs, their respective member channels and members of the public will continue to be harmed, as YouTube users continue to download and use what they believe to be exactly what Freeplay advertises – "FREE MUSIC FOR YOUTUBE."

## COUNT I
## (FEDERAL FALSE ADVERTISING)

62.    Counterclaim-Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 42 as if fully set forth herein.

63.    Freeplay has made false, deceptive, and misleading descriptions and representations of fact in its commercial advertising concerning the nature, characteristics, and qualities of its goods, services, and commercial activities, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

64.    Freeplay's false, deceptive, and misleading descriptions and representations that its music is "free," without adequate disclosure of the conditions and limitations under which its music is purportedly not "free," have deceived and are likely to deceive purchasers and consumers.

65.    Freeplay's false, deceptive, and misleading advertising has damaged Counterclaim-Plaintiffs' commercial interests by, among other things, depriving Counterclaim-Plaintiffs of advertising revenues and sales.

66.     Freeplay's false, deceptive, and misleading advertising has caused, and will continue to cause, irreparable injury to Counterclaim-Plaintiffs' goodwill, reputation and viewership, for which there is no adequate remedy at law.  Pursuant to 15 U.S.C. § 1116, Counterclaim-Plaintiffs are entitled to an injunction restraining Freeplay, its agents, employees, representatives and all persons acting in concert with it from engaging in further acts of false advertising, and ordering removal of all of Freeplay's false advertisements.

67.     Pursuant to 15 U.S.C. § 1117, Counterclaim-Plaintiffs are entitled to recover the damages sustained as a result of Freeplay's acts in violation of Lanham Act § 43(a), in an amount to be proven at trial.

68.     Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover from Freeplay the profits that it has obtained as a result of its false, deceptive, and misleading advertising.

69.     Freeplay's conduct is and, at all relevant times, has been willful, deliberate, intentional, and in bad faith.  Pursuant to 15 U.S.C. § 1117, Plaintiff is thus entitled to recover additional damages, profits and reasonable attorneys' fees.

## COUNT II
### (VIOLATION OF N.Y. GEN. BUS. LAW § 349)

70.     Counterclaim-Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 50 as if fully set forth herein.

71.     Freeplay's false, misleading, and deceptive statements and representations constitute unfair and deceptive business practices under the laws of the various states, including § 349 of the N.Y. General Business Law.

72.     Freeplay's false, misleading, and deceptive statements and representations that its music is "free," without adequate disclosure of the conditions and limitations under which its music is purportedly not "free," are deceptive and materially misleading.

73.     Freeplay's false, misleading, and deceptive statements and representations of fact are directed toward consumers, and have resulted in consumer injury and harm to the public interest in New York and nationwide.

74.     The transactions by which such harm was caused occurred in New York.  These transactions include, among other things, the license and download transactions that took place directly on Freeplay's website, which, upon information and belief, is maintained and operated from Freeplay's place of business in New York.

75.     Freeplay's conduct has caused, and will continue to cause, irreparable injury to Counterclaim-Plaintiffs, including injury to their business, reputation, goodwill and viewership, for which there is no adequate remedy at law.  Counterclaim-Plaintiffs are entitled to an injunction restraining Freeplay, its agents, employees, representatives and all persons acting in concert with it from engaging in further acts of false advertising, and ordering removal of all of Freeplay's false advertisements.

76.     By reason of Freeplay's conduct, Counterclaim-Plaintiffs have suffered injury in fact in an amount to be proven at trial.

77.     Freeplay's conduct is and, at all relevant times, has been willful, deliberate, intentional, and in bad faith.  Plaintiff is thus entitled to recover treble damages and reasonable attorneys' fees.

### COUNT III
### (VIOLATION OF N.Y. GEN. BUS. LAW § 350 *et seq.*)

78.     Counterclaim-Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 58 as if fully set forth herein.

79.     Freeplay has made, published, disseminated, and circulated false, deceptive, and misleading statements, representations, and advertisements that constitute false advertising under the laws of the various states, including N.Y. Gen. Bus. Law §§ 350 *et seq.*

80.     Freeplay's false, misleading, and deceptive representations and advertisements that its music is "free," without adequate disclosure of the conditions and limitations under which its music is purportedly not "free," are deceptive and materially misleading.

81.     Freeplay's false, misleading, and deceptive representations and advertisements are directed toward consumers, and have resulted in consumer injury and harm to the public interest in New York and nationwide.

82.     The transactions by which such harm was caused occurred in New York.  These transactions include, among other things, the license and download transactions that took place directly on Freeplay's website, which, upon information and belief, is maintained and operated from Freeplay's place of business in New York.

83.     By reason of Freeplay's conduct, Counterclaim-Plaintiffs have suffered injury in fact in an amount to be proven at trial.

84.     Freeplay's conduct has caused, and will continue to cause, irreparable injury to Counterclaim-Plaintiffs, including injury to their business, reputation, goodwill and viewership, for which there is no adequate remedy at law.  Counterclaim-Plaintiffs are entitled to an injunction restraining Freeplay, its agents, employees, representatives and all persons acting in concert with it from engaging in further acts of false advertising, and ordering removal of all of Freeplay's false advertisements.

85.    Freeplay's conduct is and, at all relevant times, has been willful, deliberate, intentional, and in bad faith.  Plaintiff is thus entitled to recover treble damages and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim-Plaintiffs respectfully request judgment against Freeplay as follows:

1.    For injunctive relief prohibiting Freeplay, its agents, or anyone working for, in concert with or on behalf of Freeplay from publishing, disseminating and/or promoting: (a) any advertisements or materials, including on Freeplay's website, claiming that any of Freeplay's music is "free," without disclosing all applicable conditions and limitations on such use, including all such conditions or limitations set forth in the Terms of Use on Freeplay's website, clearly and conspicuously, and in immediate proximity to all instances in which Freeplay claims such music is "free"; (b) all other false, misleading and deceptive statements, representations and advertisements described in the Counterclaims; and (c) all other false, misleading and deceptive statements, representations and advertisements as determined at trial or other proceeding in this action.

2.    For an Order directing Freeplay to account for and pay to Counterclaim-Plaintiffs all profits derived by Freeplay from the acts of complained of herein.

3.    That Counterclaim-Plaintiffs be awarded damages sustained as a result of Freeplay's wrongful conduct.

4.    That the foregoing damages and profits be trebled and awarded to Counterclaim-Plaintiffs as a result of Freeplay's willful, intentional and deliberate acts.

5.    That Counterclaim-Plaintiffs recover their costs and reasonable attorneys' fees.

6.      That Counterclaim-Plaintiffs be granted prejudgment and post judgment interest.

7.      That Counterclaim-Plaintiffs be granted such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Counterclaim Plaintiffs request a trial by jury on all issues so triable.

Dated:  New York, New York
        June 25, 2015

                                LOEB & LOEB LLP


                                By:   /s/ Jonathan Zavin
                                      Jonathan Zavin
                                      Wook Hwang
                                      345 Park Avenue
                                      New York, New York 10154-1895
                                      (212) 407-4000

                                *Attorneys for Defendants Awesomeness LLC and
                                Big Frame, LLC*

1348864

26